# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: August 29, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| CASSANDRA YOST, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 18-288V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Damages; Hepatitis B; |
| AND HUMAN SERVICES, | * | Shoulder Injury Related to |
| | * | Vaccine Administration ("SIRVA"). |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * | | |

*Michael P. Milmoe,* Law Offices of Leah Durant, Washington, D.C., for petitioner.
*Julia M. Collison,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON DAMAGES[1]

On February 23, 2018, Cassandra Yost ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving the hepatitis B vaccine on January 13, 2017. *Id.* A ruling on entitlement was issued on May 6, 2021, finding that petitioner suffered a Table SIRVA and she is entitled to compensation. Since that time, the parties have been unable to resolve damages in this case.

For the reasons described below, I find that petitioner is entitled to an award of damages in the amount of $125,779.51, **representing $125,000.00 for actual pain and suffering and $779.51 for past unreimbursable medical expenses.**

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The Court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the Court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the Court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the Court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

I.      **Relevant Procedural History**

The Ruling on Entitlement provides a procedural history from the time petitioner filed the petition until the Ruling on Entitlement, and that procedural history is incorporated herewith and shall not be repeated.

After I issued the Ruling on Entitlement, finding that petitioner was entitled to compensation, the parties engaged in unsuccessful settlement discussions.  On August 13, 2021, the parties filed a joint status report stating that petitioner had rejected respondent's proffer offer and requested that "the Special Master decide the issue of damages and that [a] briefing schedule" be set.  Joint Status Report ("Rept.") (ECF No. 68).  In response to the parties' request, I set a briefing schedule on the issue of damages.  Scheduling Order (ECF No. 69).

On October 5, 2021, petitioner filed a brief on damages.  Petitioner's ("Pet.") Brief (ECF No. 71).  On November 29, 2021, petitioner also filed a supplemental affidavit.  Pet. Supplemental ("Supp.") ("Aff.") (ECF No. 72).  Respondent filed a response to petitioner's brief on damages on December 15, 2021.  Respondent's ("Resp.") Brief (ECF No. 74).  On January 18, 2022, petitioner filed a reply to respondent's response on damages.  Pet. Reply (ECF No. 75).

This matter is now ripe for adjudication.

II.     **Relevant Medical History**

A complete recitation of the facts can be found in the Ruling on Entitlement.  *See Yost v Sec'y of Health & Human Servs.,* No. 18-228V, 2021 WL 2326403, at *2-8 (Fed. Cl. Spec. Mstr. May 6, 2021).

In brief, petitioner received a hepatitis B vaccination in her left upper arm on January 13, 2017.  Pet. Ex. 1 at 1.  Five months later, on May 25, 2017, petitioner presented to Dr. Mikhail Shik, reporting left shoulder pain.  Pet. Ex. 5 at 7.  At this appointment, petitioner reported that she had pain immediately after receiving the hepatitis B vaccination in January 2017.  *Id.*  Dr. Shik recorded that petitioner had pain lifting her arm with resistance in all directions and that there was a lump at the injection site.  *Id.*  Dr. Shik's impression was that petitioner had "mild adhesive bursitis or a mild left shoulder joint strain," and referred petitioner to physical therapy. *Id.*

Petitioner presented to NRH Rehabilitation Network in Rockville, Maryland for physical therapy on June 5, 2017.  Pet. Ex. 2 at 1.  Physical Therapist Ms. Jessica Lovins, observed a "pimple-like appearance [at the] injection site that appears to be healing," and wrote that petitioner had reported a "recent history of pus coming out of the injection site."  *Id.*  Petitioner reported her pain was a seven out of ten at its worst and that she had difficulty sleeping on her left side.  *Id.*  After four physical therapy sessions, on June 27, 2017, petitioner requested to be discharged.  *Id.* at 17.  The note stated, "Pt would like to be discharged secondary to "not making progress."  *Id.*

On June 26, 2017, petitioner had an appointment with pain specialist, Dr. Nicholette Martin at Rockville Internal Medicine Group. Pet. Ex. 5 at 4. Petitioner reported that she has had to limit her activities, including lifting at nursing school and that physical therapy has not helped. *Id.* at 5. Petitioner also reported that "the injection site cycles red, raised and then flat, then repeats," and that there was "one episode of drainage" two weeks prior to the appointment with a "popping like a black head." *Id.* Petitioner also reported that she was unable to do exercises to hold her own body weight. *Id.* The physical exam showed that petitioner had decreased range of motion with both active and passive movements. *Id.* Dr. Martin diagnosed petitioner with "Shoulder pain-left: ? bone bruise from vaccination; pain in the left shoulder." *Id.* Dr. Martin wrote petitioner a prescription for tramadol 37.5 mg-acetaminophen. *Id.* at 6.

On July 28, 2017, petitioner had an annual appointment with Dr. Shik. Pet. Ex. 5 at 1. Dr. Shik stated that petitioner presented for her regular physical and that she needs paperwork filled out because she is returning to school. *Id.* Dr. Shik wrote, "Petitioner has no complaints except for pain in the left shoulder." *Id.* During the physical exam, Dr. Shik observed that petitioner had tenderness on palpation on her left shoulder joint, mostly posteriously and laterally.

On August 11, 2017, petitioner had an evaluation of her left shoulder at Shady Grove Orthopedics. Pet. Ex. 3 at 1. In 'History of Present Illness,' Dr. Joseph A. Shrout wrote, "The patient is a 23 year-old female here for evaluation of left shoulder pain. She had a Hepatitis B vaccination on 01/13/17 and has been having increasing pain and swelling." *Id.* He noted that petitioner reported periods of inflammation, pus accumulation, and drainage at the injection site. *Id.* Dr. Shrout performed an exam of the left shoulder, which showed full range of motion but with pain overhead reach, forward flexion and abduction. *Id.* He observed that her rotator cuff strength was normal with resistance, but with pain. *Id.* Dr. Shrout diagnosed petitioner with subacromial bursitis of the left shoulder. *Id.* At this appointment petitioner received a cortisone injection into the subacromial space. *Id.*

Petitioner returned to Dr. Shrout on September 5, 2017 for a follow-up exam of her left shoulder. Pet. Ex. 3 at 3. She reported that the cortisone shot initially gave her significant relief for about two weeks, but the pain returned. *Id.* Petitioner stated that she was taking ibuprofen twice a day to relieve pain. *Id.* At this appointment, she had a positive Neer's test and pain with resistance on the drop arm test. *Id.* Petitioner was diagnosed with adhesive capsulitis and bursitis of the left shoulder. *Id.* Dr. Shrout declined to administer another cortisone injection because it was too close to her last injection. *Id.* He recommended she take Aleve or Advil two to three times a day to relieve pain. *Id.*

The same day, September 5, 2017, petitioner called Dr. Shrout's office asking if she should see "someone about the cyst on her arm." Pet. Ex. 3 at 7. The telephone encounter note indicated that a person from Dr. Shrout's office left a message for petitioner stating that "the lump on her arm will resolve on its own, no need to see someone." *Id.*

On September 19, 2017, petitioner had a follow-up appointment with Dr. Shrout. Pet. Ex. 3 at 5. She reported ongoing pain in her left shoulder and sharp pain when she does not take Aleve. *Id.* Petitioner also reported she was doing exercises at home she learned at physical

therapy. *Id.* Dr. Shrout performed another examination of petitioner's left shoulder, which demonstrated a reduced range of motion on external rotation compared to her right shoulder. *Id.* Dr. Shrout diagnosed petitioner with adhesive capsulitis of the left shoulder and bursitis of the left shoulder. *Id.* He recommended that she continue to do range of motion exercises for her left shoulder at home twice a day daily and take Aleve twice a day. *Id.*

On January 2, 2018, petitioner returned to Shady Grove Orthopaedics and saw Dr. Mark Peterson. Pet. Ex. 3 at 17. Petitioner reported that she had "tremendous pain when trying to move her shoulder at all," and that she had to limit her activities because of her symptoms. *Id.* Dr. Peterson noted that the onset of her left shoulder issues, including pain and stiffness, began "about a year ago (01/13/2017) after receiving a Hepatitis B vaccination." *Id.* Dr. Peterson performed a physical examination where petitioner demonstrated an "external rotation of 70 degrees at her side, abduction to 110 degrees, 50 degrees of external rotation at 90, and internal rotation to L2 (T11 on the right)." *Id.* He diagnosed petitioner with adhesive capsulitis of the left shoulder, and he administered a cortisone injection into her intra-articular space of her left shoulder. *Id.* He also provided her a referral for physical therapy and gave her range of motion exercises to perform at home. *Id.* at 18.

Petitioner filed a third affidavit on November 29, 2021. Pet. Ex. 16. In this affidavit, petitioner reiterated that she was first able to see a doctor in May 2017 due to her nursing school and work obligations. Pet. Ex. 16 at ¶ 2. She stated that between January 2017 and May 2017 she "suffered from extreme shoulder pain and discomfort, as well as an itchy, pus-filled abscess at the location of the vaccination on my left shoulder." *Id.* Petitioner stated that she was unable to complete many tasks in nursing school without experiencing pain, including turning patients, ambulating patients, or even reaching up to high shelves to retrieve medication or supplies. *Id.* Further, petitioner had difficulty assisting the child she was working with out of his wheelchair and aiding in his therapy exercises. *Id.* In her personal life, petitioner explained that she could not sleep on her left side or use her left arm without extreme discomfort. *Id.* The Tramadol she was prescribed did not improve her pain. *Id.*

Petitioner stated that the physical therapy caused her extreme pain. *Id.* at ¶ 3. She sought the treatment of orthopedic surgeon, Dr. Shrout, who administered a cortisone injection. *Id.* Petitioner explained that the cortisone injection "provided relief for approximately one week until the pain returned." *Id.* Petitioner stated that she was able to "keep the pain at a manageable level with a strict home exercise schedule, sometimes doing home exercises multiple times a day, and Aleve nearly around the clock." *Id.*

Petitioner explained that in January 2018, she returned to the orthopedic surgeon because her "shoulder pain had not subsided and I continued to suffer from a pus-filled abscess." Pet. Ex. 16 at ¶ 4. She stated that the second steroid shot only alleviated her pain for a short period of time. *Id.* Petitioner also stated that she was unable to return to physical therapy or the orthopedic surgeon after her last appointment in January 2018 due to her school and work schedule. *Id.* She stated that she was "diligent with her home exercise program and taking Aleve to keep her pain at a manageable level." *Id.*

While there are no additional medical records past January 2018, petitioner explained that she was doing her exercises "almost every day before bed," and that she continued to take Aleve every day. *Id.* at ¶ 5. She stated that she graduated from nursing school in May 2018 and began her first job as a registered nurse. *Id.* Petitioner stated that she was unable to see a provider given her work responsibilities and new family responsibilities. *Id.* She stated that she has experienced pain in her left shoulder "through the end of 2018 and into 2020." *Id.* at ¶ 6.

## III.   Legal Standard

The Vaccine Act provides that "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury," a petitioner may recover "an award not to exceed $250,000." 42 U.S.C. § 300aa-15(a)(4). With regard to pain and suffering and all other elements of damages, the petitioner bears the burden of proof and the medical records are the most reliable evidence of petitioner's condition. *See, e.g.*, *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996); *Shapiro v. Sec'y of Health & Hum. Servs.,* 101 Fed. Cl. 532, 537-38 (2011).

Prior to my appointment as a special master, former Chief Special Master Golkiewicz and others developed an approach with the goal "to fairly treat all petitioners" by "creat[ing] a continuum of injury", in which the statutory cap was reserved for the most severe injuries and lower awards were made for less severe injuries. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2007 WL *914914, at *5 (Fed. Cl. Spec. Mstr. Feb. 28, 2007). In *Graves¸* Judge Merow granted review of a special master's pain and suffering award, holding that the "continuum" approach was not "rooted in the statute or precedent". *Graves v. Sec'y of Health and Human Servs.,* 109 Fed. Cl. 579, 590 (2013). Judge Merow set forth a different approach in which the first step is to assess an individual petitioner's pain and suffering by looking to the record evidence, without regard to the $250,000 cap. Only then as a second step, if the award would exceed $250,000, it must be reduced to that maximum. *See id.* at 589-90.

In the Vaccine Program's subsequent history, special masters have of course not been bound by *Graves*.[3] However, they have found it to be persuasive. *See, e.g.*, *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *10 (Fed. Cl. Spec. Mstr. Moran April 19, 2013) ("Under the interpretation of the statute offered in *Graves*, cases that used the spectrum approach, such as *Hocraffer* and *Long*, are no longer useful measuring points"); *Reed v. Sec'y of Health & Human Servs.*, No. 16.1670V, 2019 WL 1222925, at *12 (Fed. Cl. Chief Spec. Mstr. Dorsey Feb. 1, 2019) ("it must be stressed that pain and suffering is not based on a continuum"); *Selling v. Sec'y of Health & Human Servs.*, No. 16-588V, 2019 WL 3425224, at *5 (Fed. Cl. Spec. Mstr. Oler May 2, 2019) ("Pain and suffering is not, however, determined based on a continuum"); *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2019 WL 4072069, at *13 (Fed. Cl. Spec. Mstr. Corcoran July 29, 2019) ("… special masters appear to

---

[3] Decisions of special masters and the U.S. Court of Federal Claims constitute persuasive but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). In contrast, the Federal Circuit's holdings on legal issues are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 F. App'x 712 (Fed. Cir. 2004); *see also Spooner v. Sec'y of Health & Human Servs.*, No. 13-159V, 2014 WL 504728, at n.12 (Fed. Cl. Spec. Mstr. Jan. 16, 2014).

have accepted *Graves*'s methodology since issuance of that decision… I will apply it herein as well, although I do so mindful of the need to consider the overall strength of petitioner's showing herein"), *motion for review granted and remanded on other grounds,* 147 Fed. Cl. 131 (2020); *W.B. v. Sec'y of Health & Human Servs.*, No. 18-1364V, 2020 WL 5509686, at *3 (Fed. Cl. Chief Spec. Mstr. Corcoran Aug. 7, 2020) ("it must be stressed that pain and suffering is not based on a continuum"). I agree with this prevailing approach. I assess the full value of the damages in a particular case before me, then apply the statutory cap if that becomes necessary.

There is no mathematical formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D.*, 2013 WL 2448125, at *9 ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *Id.* at *9 (internal citations omitted). I find it appropriate to also consider any impairments in function and/or lost ability to participate in activities which the petitioner previously enjoyed, as a result of the injury.

A special master may also consider prior pain and suffering awards, especially for similar injuries, from both inside and outside of the Vaccine Program to aid the resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). A special master may also rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## IV.    The parties' arguments

### a.    Petitioner's position

Petitioner requests an award of $155,000.00 in past pain and suffering and $779.51 in past unreimbursable expenses. Pet. Brief at 8. Specifically, petitioner is requesting $120,000.00 in pain and suffering related to her shoulder pain and $35,000.00 in pain and suffering related to "an ugly abscess and resulting scar," on her shoulder which resulted from the hepatitis B vaccination. *Id.* at 12-13. Petitioner stated that her request for $155,000.00 is supported by the course of her SIRVA, the physical and mental anguish she has been through, and the duration of her injury. *Id.* at 8.

Petitioner stated that, "In determining an award for pain and suffering in this case, the […] Special Master must carefully review the particular facts and circumstances of any particular case, the course of the disease, the physical and mental anguish endured by petitioner, and the residua of the injury." Pet. Brief at 8. She argued that her "initial course of SIRVA was severe as any SIRVA case in the program." *Id.* Petitioner stated that her pain levels were extremely high for the first year of her injury, and this pain caused a great deal of frustration and difficulty during her final semesters in nursing school." *Id.* Petitioner pointed to her last

medical record from January 2, 2018, where she reported that her "left shoulder still hurts." *Id.;* Pet. Ex. 3 at 17. At this appointment, it was noted that petitioner's symptoms had been going on for "about a year, after receiving the hepatitis B vaccination, including pain and stiffness." Pet. Ex. 3 at 17. This appointment acknowledged that petitioner had previously engaged in physical therapy and received one cortisone injection. *Id.* Petitioner reported "tremendous pain when trying to move her shoulder at all," and that she has had to limit her activities because of her symptoms." *Id.* Dr. Mark Peterson, orthopedic, diagnosed petitioner with adhesive capsulitis of the left shoulder and administered an intra-articular injection of Celestone and Macaine into petitioner's left shoulder. *Id.* Dr. Peterson referred petitioner to "formal physical therapy." *Id.*

While petitioner acknowledged that she did not have any additional treatment for her left shoulder past January 2018, she stated that was because of her "school responsibilities, nursing duties, marriage, and the birth of her two children," her pain levels were "high through the beginning of 2020, a period of three full years." Pet. Brief at 9. She asserted that her SIRVA injury impacted her "capabilities both at work and at home while caring for her young family." *Id.*

Petitioner asserted that she was acutely aware of the pain she experienced immediately following the vaccination, and it affected "every aspect of her life, including her postgraduate nursing studies, professional duties, and being a new mother." Pet. Brief at 10. She stated that her "intense pain began almost immediately after receiving her vaccination," and that her pain got "progressively worse." *Id.* In her first affidavit, petitioner stated that the day after the vaccination, her "left arm was extremely sore and I could not move it without pain. The injection site where the vaccination was administered was red and itchy." Pet. Aff. at ¶ 2. At her first medical appointment for the pain in her left shoulder on May 25, 2017, petitioner reported, that she developed pain in her left shoulder which "started immediately after final booster been given to her on the left shoulder." Pet. Ex. 5 at 7. Petitioner cited to Dr. Catherine Shaer's affidavit, in which Dr. Shaer recalled a conversation she had with petitioner in the spring of 2017, where petitioner reported that she had "severe left shoulder pain immediately upon receipt of a vaccine in January and it had gotten worse over a period of time and still quite painful." *Id.* at 10; Pet. Ex. 10 at ¶ 3. Additionally, Dr. Shaer recalled that petitioner said she was having difficulty sleeping on her left shoulder, she could not carry her purse on her left shoulder, and that the "pain was exaggerated with some movements to the point where it was interfering with her ability to perform some duties in nursing school." Pet. Ex. 10 at ¶ 3.

Petitioner also explained that her "whole first year with SIRVA was full of severe and constant pain." Pet. Brief at 10. In her first affidavit, petitioner described that "over the next few weeks, the injection site developed a raised lump and looked red and swollen." Pet. Aff. at ¶ 3. She stated that "the pain in my left shoulder caused significant discomfort during nursing school clinical tasks and everyday activities." *Id.* She explained that she was a healthy 22-year-old with no prior health problems. *Id.* at ¶ 4. When petitioner was finally able to seek medical treatment for her left shoulder pain after her spring semester ended, she reported that her pain was a 7 out of 10. *See* Pet. Ex. 2 at 1. At her first appointment for treatment, petitioner also reported a "minor lump at the site of the injection." Pet. Ex. 5 at 7. At her physical therapy evaluation on June 5, 2017, it was noted that there was a "pimple-like appearance of injection site that appears to be healing." Pet. Ex. 2 at 1. Petitioner had reported that there was a "recent

history of pus coming out of injection site." *Id.* Further, petitioner recalled that the pain in her left shoulder was so significant it affected her ability to perform her duties as a caretaker for a child with cerebral palsy. Pet. Aff. at ¶ 3.  She described, "I could not lift him out of or into his chair without extreme pain in my left shoulder." *Id.*  Petitioner stated that her left shoulder pain also affected her ability to engage in exercising, such as yoga or lifting exercises with her left arm. *Id.*

Petitioner stated that the physical therapy she attended in June 2017 left her "in tears from the extreme pain." Pet. Ex. 16 at ¶ 3.  On June 27, 2017, after three weeks of physical therapy, petitioner was discharged because she was "not making progress." Pet. Ex. 2 at 17. Petitioner sought treatment from an orthopedist, Dr. Joseph Shrout, who performed an exam of petitioner's left shoulder. Pet. Ex. 3 at 1.  Dr. Shrout observed that petitioner had full range of motion, but with pain on overhead reach, forward flexion and abduction. *Id.*  Additionally, Dr. Shrout observed a "small raised area at the previous injection site." *Id.*  He diagnosed petitioner with "bursitis of left shoulder," and administered a steroid injection into petitioner's left subacromial space. *Id.*  Petitioner stated that the steroid injection provided one week of relief. Pet. Ex. 16 at ¶ 3.  She performed home exercises and took Aleve "nearly around the clock," to relieve her symptoms. *Id.*  Petitioner returned to Shady Grove Orthopedics in January 2018 to receive an additional steroid injection. Pet. Brief at 10; Pet. Ex. 3 at 17; Pet. Ex. 16 at ¶ 4.  At this appointment, Dr. Mark Peterson, recorded that petitioner has "had to limit her activities because of her symptoms," and that petitioner has "tremendous pain when trying to move her shoulder at all." Pet. Ex. 3 at 17.  Petitioner was diagnosed with adhesive capsulitis of the left shoulder and another steroid injection was administered. *Id.*

Petitioner stated that she has since recovered from her SIRVA but suffered for "a period of excess of three years." Pet. Brief at 10.  Petitioner compared her case to the *Cooper* case, where the petitioner was awarded $110,000.00 in past pain and suffering for a SIRVA after a hepatitis A vaccination. Pet. Brief at 11.  In *Cooper,* the special master found that the petitioner had "experienced approximately eight months of severe or significant pain following her SIRVA, followed by a longer period of residual pain and reduced range of motion." *Cooper v. Sec'y of Health & Human Servs.,* No. 16-1387V, 2018 WL 6288181, at *12 (Fed. Cl. Spec. Mstr. Nov. 7, 2018).  Additionally, the special master found that petitioner's reduced range of motion lasted approximately two years and nine months following the petitioner's injurious vaccination. *Id.*  In this case, petitioner stated that she has "suffered a far greater injury than the petitioner in *Cooper*, in terms of severity and duration." Pet. Brief at 12.  Petitioner noted that she received two steroid injections, whereas the petitioner in *Cooper* opted for more conservative treatment. *Id.* at 12; *see also Cooper,* at *13.  Additionally, petitioner stated that her acute pain has lasted longer than the petitioner in *Cooper*. Pet. Brief at 12.  Petitioner argued that because of the severe nature of the injury and the length of acute pain she suffered, compared to the petitioner in *Cooper,* an award of $120,000.00 for "the shoulder portion of her pain and suffering award," is warranted. *Id.*

Additionally, petitioner argued that she should be awarded $35,000.00 in pain and suffering for the "ugly abscess and resulting scar," that appeared at the vaccine injection site. Pet. Brief at 13.  Petitioner cited to multiple cases support her claim for  damages resulting from skin damages from various vaccinations. Pet. Brief at 13-14.  Petitioner stated, "These

comparable cases support an award of $35,000.00 for the abscess and scar caused by the vaccine." *Id.*

In her reply, petitioner argued that the *Ramos* case cited by respondent is not a comparable case. Pet. Reply at 2. Petitioner stated that the petitioner in *Ramos* did not receive any steroid injections or that he sought treatment from a pain management specialist. *Id.*; *Ramos v. Sec'y of Health & Human Servs.,* No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021). Petitioner argued that respondent only cited to *Ramos* because it "reflects the lowest amount ever awarded by a Special Master in a SIRVA case." Pet. Reply at 3. Additionally, petitioner argued that respondent "ignores petitioner's three affidavits and the affidavit of her friend, Dr. Shaer." Pet. Reply at 4. Petitioner stated that these affidavits are entitled to great weight because they provide first-hand knowledge regarding the onset of petitioner's shoulder pain and the affidavits are consistent with petitioner's medical records. *Id.* Petitioner reiterated her request for $155,000.00 in pain and suffering. *Id.* at 6.

### b. Respondent's position

Respondent proposed an award of $35,779.51 to petitioner, with $35,000.00 representing pain and suffering. Resp. Brief at 1. Respondent stated that "petitioner's medical records reflect that she sustained a relatively minor injury and received some conservative treatment." *Id.* at 10. Respondent argued that "petitioner attended four physical therapy sessions, received two steroid injections, and consulted with her primary care provider and orthopedic specialist from May 25, 2017 to January 2, 2018. She has not taken any narcotic pain medication or had an MRI. She has not undergone surgery and has now fully recovered." *Id.*

Respondent cited to *Ramos*, as a "comparative case for evaluating petitioner's pain and suffering claim." Resp. Brief at 10. In *Ramos,* the petitioner was awarded $40,000.00 for pain and suffering, following a SIRVA injury. *Ramos,* 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021). Respondent acknowledged that the petitioner in *Ramos,* did not receive any steroid injections, unlike petitioner in the present case. Resp. Brief at 10. Nevertheless, respondent argued that the petitioner in *Ramos* had a longer treatment period and was only awarded $40,000.00 for pain and suffering. Therefore, an award of $35,000.00 for petitioner's pain and suffering from her SIRVA injury is reasonable. *Id.*

Respondent also contended that the petitioner in *Cooper,* was not similarly situated to the petitioner in the present case. Resp. Brief at 11. Respondent stated that the petitioner in *Cooper* had 49 physical therapy sessions over two years, several chiropractic, massage and acupuncture treatment for the SIRVA injury, which was "more extensive over a much longer period of time," and therefore, the petitioner in *Cooper,* presented a more severe case of SIRVA to justify the higher pain and suffering award. *Id.*

Respondent also argued that petitioner's "claimed abscess should not be compensated." Resp. Brief at 11. Respondent stated that the cases referenced by petitioner were all cases resolved by proffer or settlement, and there is no public information regarding the course of treatment or degree of residual scarring in those cases. *Id.*; *see also* Pet. Brief at 13-14. Respondent further asserted that petitioner did not specifically seek treatment for her abscess, nor

did she have an infection or receive antibiotics for any treatment. *Id*. Therefore, respondent stated that petitioner should not receive compensation for the scar at the injection site. *Id*.

## V.   Discussion and Conclusion

As noted above, factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9. Impairment of function and loss of activities are also considered. It does not appear that the parties dispute petitioner's awareness of her injury. Additionally, the record reflects that petitioner was aware of her injury when it occurred and when she was able to seek treatment, did so. She reported her injury to medical professionals and associated the onset of her pain to the hepatitis B vaccination she received on January 13, 2017. Thus, the focus of the dispute between the parties is on the severity and duration of petitioner's injury.

For the reasons discussed below, I find that $125,000.00 represents a fair and appropriate amount of compensation for petitioner's actual pain and suffering for her left shoulder pain and dysfunction and the abscess and scar at the injection caused by the January 13, 2017 hepatitis B vaccination.

### a.   Petitioner's left shoulder pain and dysfunction

In petitioner's multiple affidavits, she consistently stated that pain in her left arm began immediately following the hepatitis B vaccination on January 13, 2017. *See* Pet. Aff. at ¶ 2; Pet. Ex. 12 at ¶ 2; Pet. Ex. 16 at ¶ 1. On May 25, 2017, petitioner sought treatment for her left shoulder from Dr. Mikhail Shik. Pet. Ex. 5 at 6. Dr. Shik recorded, "In January of this year, patient developed left shoulder pain. She contributed her symptoms to hepatitis B immunization. She reports the pain started immediately after final booster [had] been given to her on the left shoulder." *Id*. Petitioner also reported that she was unable to sleep on her left side. *Id*. Dr. Shik observed that petitioner had muscle tenderness and tenderness on palpation on the left shoulder joint and that pain was elicited when petitioner lifted her arm above 90 degrees in all directions. *Id*. at 8. Further, Dr. Shik recorded that "pain occurred with lifting above 75 degrees in all planes against resistance." *Id*.

When petitioner presented to her first physical therapy appointment on June 5, 2017, she reported that her pain was a 7 out of 10. Pet. Ex. 2 at 7. This was five months after the vaccination. Petitioner also had reduced range of motion at this appointment that was affecting her ability to perform her nursing duties. *Id*. Additionally, the physical therapist observed that petitioner had a "pimple-like appearance" at the injection that "appears to be healing," after a recent "history of pus coming out of [the] injection site." *Id*. at 4. At her next physical therapy appointment on June 13, 2017, petitioner reported that her left shoulder was "hurting more after last session" and that she was doing the home exercises, despite causing more pain to her left shoulder. *Id*. at 11. Her current pain was rated at a five out of 10, but it was noted that on June 5, 2017, her current pain was only rated at a 2 out of 10. *Id*. On June 16, 2017, petitioner reported that her pain was at a 3 out of 10, but that she was no longer doing any arm exercises at the gym. *Id*. at 13. During that session, petitioner had increased pain with "rows," so additional

exercises were deferred. *Id.* On June 24, 2017, her last physical therapy appointment, petitioner reported that her pain felt the same and that it was a 4 out of 10. *Id.* at 15. Three days later, on June 27, 2017, petitioner was discharged from physical therapy. *Id.* at 17. The note from this record states, "Pt would like to be discharged secondary to 'not making progress.'" *Id.*

On June 26, 2017, petitioner had an appointment with Dr. Nicholette Martin, for pain management of her left shoulder. Pet. Ex. 5 at 3. Petitioner reported that her left shoulder pain was limiting her activities, including lifting at work. *Id.* Dr. Martin wrote that the injection site "cyles red, raised and then flat, then repeats. Did have one episode of drainage 2 weeks ago with 'popping' like a black head." *Id.* Petitioner reported that she was "unable to do exercise to hold body weight." *Id.* The physical exam showed that petitioner had decreased range of motion in active and passive flexion, active and passive extension, and she had tenderness. *Id.* Petitioner's strength on her left shoulder was 4/5 on abduction and her left elbow strength was recorded at 4/5 on flexion and extension. *Id.* at 5. Dr. Martin prescribed petitioner tramadol, an opioid. *Id.*

In her affidavit, petitioner stated that the injection site on her left arm began to drain pus for a second time. Pet. Aff. at ¶ 9. Petitioner returned to Dr. Shik on July 28, 2017, for a physical for the upcoming school year. Pet. Ex. 5 at 1. At this appointment, petitioner reported that her left shoulder still hurt and that she had "no improvement after physical therapy and prescription of tramadol with acetaminophen." *Id.* at 2. The physical examination revealed that petitioner had "tenderness on palpation on the left shoulder," and petitioner had pain when lifting her left arm above 90 degrees in all planes and pain with lifting above 75 degrees in all planes against resistance. *Id.* at 3. Dr. Shik referred petitioner to a sports medicine physician. *Id.*

Nearly eight months post-vaccination, petitioner was not having any pain relief. In her supplemental affidavit, petitioner stated that the Tramadol did not provide any relief to her left shoulder pain. Pet. Ex. 16 at ¶ 1. At her appointment with Dr. Shrout, petitioner reported "periods of inflammation, pus accumulation, and drainage at the injection site," and pain in her left shoulder following the hepatitis B vaccination on January 13, 2017. Pet. Ex. 3 at 1. Dr. Shrout observed a small, raised area at the previous injection site on her left shoulder. *Id.* While he noted that petitioner had full range of motion, he also observed that she had pain with overhead reach, forward flexion and on abduction. *Id.* Dr. Shrout administered the first of two cortisone shots petitioner would receive. *Id.* at 2. Petitioner stated that the cortisone injection provided pain "relief for approximately one week," but then the pain returned. Pet. Ex. 16 at ¶ 3. Petitioner returned to Dr. Shrout two more times in September 2017. *See.* Pet. Ex. 3 at 3-6. Consistent with her affidavit, the September 5, 2017 appointment record indicates that petitioner received pain relief for only a short-period of time after the steroid injection. Pet. Ex. 3 at 3. Petitioner was instructed to take Aleve twice a day. *Id.* Petitioner stated that she was taking Aleve around the clock and doing exercises at home. Pet. Ex. 16 at ¶ 3.

One year after the hepatitis B vaccination, petitioner returned to Shady Grove Orthopedics and was seen by Dr. Peterson. Pet. Ex. 3 at 17. At the January 2, 2018 appointment, petitioner reported "tremendous pain when trying to move her shoulders at all," and that she has had to limit her activities because of her symptoms. *Id.* Her physical exam showed decreased range of motion. *Id.* Petitioner was diagnosed with adhesive capsulitis of the left shoulder and given another steroid injection. *Id.* at 17-18. In her supplemental affidavit,

petitioner stated that she was unable to return to physical therapy due to her work and school schedule but was diligent with her home exercises and taking Aleve.  Pet. Ex. 16 at ¶ 4.

The records discussed above demonstrate that petitioner suffered a moderately severe left shoulder injury following her January 13, 2017 vaccination.  While petitioner admittedly waited four months to seek treatment for her left shoulder injury, I found that the reason for delay in seeking treatment was reasonable.  *See Yost,* No. 18-228, 2021 WL 2326403, at *13.  Further, once petitioner presented for treatment, it was consistently observed that she had pain when moving her arm, pain while sleeping, and some type of dermatological injury at the injection site.  Petitioner reported to multiple providers that the pain was limiting her ability to perform tasks at nursing school and limiting her other activities.  *See* Pet. Ex. 3 at 17; Pet. Ex. 5 at 5; Pet. Ex. 2 at 1.

The *Ramos* case, referenced by the respondent as a comparable case, is easily distinguishable from the present one.  In *Ramos,* the petitioner delayed treatment for a significant period of time, much like the petitioner in the present case, however, when the petitioner in *Ramos* sought treatment, he only reported his pain a 3 out of 10.  *Ramos,* 2021 WL 688576, at *5.  Further, the petitioner in *Ramos,* did not receive any steroid injections and was only advised to use over-the-counter medication to treat his pain.  *Id.*  Additionally, four months after petitioner sought treatment in *Ramos,* he reported his pain as a 0 out of 10.  *Id.*  Here, when petitioner sought treatment for her left shoulder pain, she rated the pain at a 7 out of 10; she was prescribed Tramadol, an opioid for her pain; she did a course of physical therapy and she received two steroid injections, that provided little pain relief.  *See* Pet. Ex. 5 at 2; Pet. Ex. 3; and Pet. Ex. 2 at 2.  While petitioner did not have an MRI, she did have an X-ray of her left shoulder.  Pet. Ex. 5 at 15.  Additionally, petitioner did not have any noticeable improvement in symptoms one year after the injection.  Instead, at her January 2, 2018 appointment, petitioner demonstrated decreased internal and external rotation on her left shoulder, compared to her range of motion measured on August 11, 2017.  *See* Pet. Ex. 3 at 5, 17.  The only similarity between the petitioner in *Ramos,* and petitioner in this case, is that both delayed treatment for four months post-vaccination.  Aside from that, the cases diverge regarding severity and duration of injury.

Petitioner cited to *Cooper*, as a more relevant, comparable case to the present case.  Pet. Brief at 1.  In *Cooper,* the petitioner was awarded $110,000.00 in actual or past pain and suffering for her SIRVA.  *Cooper,* 2018 WL 6288181, at *15.  Former Chief Special Master Dorsey reasoned that petitioner experienced a period of eight months of severe or significant pain, followed by a longer period of residual pain and reduced range of motion.  *Id.* at *12.  Additionally, former Chief Special Master Dorsey took into consideration the petitioner's delay in treatment and that the petitioner also did not have any steroid injections.  *Id.* at *13.  I find that the facts of *Cooper* are more comparable with the facts of the present case, than the *Ramos* case referenced by respondent.

The medical records and petitioner's affidavits demonstrate that her left shoulder pain was severe for approximately one year following the vaccination.  Petitioner attempted physical therapy, but was discharged early because she felt her left shoulder pain was getting worse, not better.  Additionally, petitioner received two cortisone injection shots, which the petitioner in *Cooper* did not.  Petitioner's updated affidavit explains that she suffered from residual pain for

another two years and is consistent with the other two affidavits filed by petitioner.  *See* Pet. Ex. 16 at ¶ 6.  Petitioner stated that she performed the home exercises every day before bed and continued to take Aleve daily.  *Id.* at ¶ 5.  Petitioner also explained that she graduated from nursing school in May of 2018, went into her first job, and then started a family, leaving her no time to see a provider for her shoulder.  *Id.*  She stated that her pain continued through the end of 2018 and into 2020.  *Id.* at ¶ 6.  Given the severity of the pain and duration of the severe pain and petitioner's treatment course, an amount of $115,000.00 for petitioner's actual or past pain and suffering is an appropriate award for her left SIRVA.

### b.  Petitioner's injection site abscess and scar

Petitioner's medical records, statements, and submitted photographs demonstrate that she also suffered from an injection site injury that resulted in an abscess and scar on her left shoulder.

In multiple medical records, petitioner reported that the injection site of where she received the hepatitis B vaccine caused a lesion on her skin.  For example, Dr. Shik wrote that petitioner had a "minor lump at the site of injection."  Pet. Ex. 5 at 11.  Six months after petitioner received the vaccination, the injection site was still irritated.  At petitioner's appointment with Dr. Martin on June 26, 2017, she reported that the injection site "cycles red, raised, and then flat, then repeats."  Pet. Ex. 5 at 5.  At this appointment, petitioner also reported that the injection site had "one episode of drainage 2 weeks ago with "popping" like a black head."  *Id.*  Eight months after the vaccination, Dr. Shrout observed that petitioner had a "small raised area at the previous injection site."  Pet. Ex. 3 at 1.  On September 5, 2017, petitioner phone Dr. Shrout's office to ask about the "cyst on her arm."  Pet. Ex. 3 at 7.  Dr. Shrout advised petitioner that "the lump on her arm will resolve on its own, no need to see someone."  *Id.*

In the affidavit from Dr. Shaer, an acquittance of petitioner, she also described the lesion at the injection site on petitioner's left shoulder.  Pet. Ex. 10 at ¶ 3.  Dr. Shaer explained that when she saw petitioner in the spring of 2017, petitioner described a "small draining lesion that appeared at the vaccination site."  *Id.*  Dr. Shaer stated that she saw the injection site on petitioner's left arm and described it as "a circular area of what I felt was post inflammatory hyperpigmentation (a dark spot) about ¼ inch in diameter."  *Id.*  Dr. Shaer advised petitioner to take photographs of the injection site.  When Dr. Shaer saw the petitioner a few weeks later, in the spring of 2017, she once again observed the petitioner's injection site and stated she saw a "small abscess, a little smaller than ¼ inch in diameter, right in the middle of the area of hyperpigmentation.  It was pointing (coming to a head), but not draining."  Pet. Ex. 10 at ¶ 2.

In the photographs submitted by petitioner, there is clearly an abscess or scar towards the upper, back of petitioner's left arm.  In the photograph which is dated "June 4, 2017," it shows a red, raised bump that appears to be filled with fluid.  Shortly after this picture was taken, petitioner reported to Dr. Martin that the abscess had drained.  *See* Pet. Ex. 5 at 5.  In the photo marked June 1, 2017, petitioner used a quarter as a size comparison to the injection site mark.  Pet. Ex.11 at 3.  The red mark is substantially smaller than the quarter.

13

Respondent argued that petitioner should not be compensated for the injection site abscess, which is well documented in the medical records and by photographic evidence submitted by petitioner. Resp. Brief at 11. Respondent stated that "petitioner did not specifically seek treatment for this condition," and that "petitioner did not have an infection and did not receive antibiotics." *Id.* However, at multiple medical appointments, petitioner mentioned that the injection site was irritated. *See* Pet. Ex. 5 at 5 (Dr. Martin recording that the injection site "cycles red, raised, then flat."); Pet. Ex. 5 at 7 (petitioner reported a "minor lump at the site of injection."); Pet. Ex. 2 at 1 (petitioner reported "injection site is swollen and red and raised."). Further, petitioner asked Dr. Shrout if she should see a different provider about the cyst at the injection site, Dr. Shrout and he stated, "no need to see someone," and explained that the "lump on her arm would resolve on its own." *See* Pet. Ex. 3 at 7. Further, there were multiple references in the medical records to a red and swollen mark at the injection site, as well as drainage at various times and the filed photographs demonstrated a residual scar.

However, the cases referenced by petitioner are not necessarily comparable to the present one. First, as respondent correctly observed, some of these cases, such as *Moore, Codde,* and *Vinueza,* were cases conceded by respondent and resolved on stipulation or proffer. Second, it appears that in these cases, the only injury petitioners were claiming was their dermatological injury. For example, in both *Moore[4]* and *Codde,* the only injury claimed was for "cellulitis and a scar" on small children. *See Lake v. Sec'y of Health & Human Servs.,* No. 16-856V, 2017 WL 1533550 (Fed. Cl. Spec. Mstr. Jan. 4, 2017); *Codde v. Sec'y of Health & Human Servs.,* No. 16-812V, 2016 WL 8378159 (Fed. Cl. Spec. Mstr. Nov. 15, 2016). In *Vinueza,* respondent also conceded that the influenza vaccine caused the petitioner an abscess and permanent scar. *Vinuza v. Sec'y of Health & Human Servs.,* No. 19-324, 2020 WL 3494384 (Fed. Cl. Spec. Mstr. May 19, 2020). All of these cases reference a "permanent scar" resulting from vaccination but information regarding the size of the injury, the treatment course for the abscess and/or cellulitis, and the impact on the petitioners. Thus, it is difficult to compare those cases to the present one.

In this case, an award of $10,000.00 for pain and suffering resulting from the abscess and scar on the back of petitioner's left arm is reasonable. The medical records demonstrate that petitioner developed an abscess at the injection site on her left upper arm after the hepatitis B vaccination and that for a period of approximately nine months following the vaccination the abscess cycled through being red, pus accumulation and then draining. *See* Pet. Ex. 3 at 1. Petitioner's physical therapist observed that a "pimple-like appearance of injection site," in June 2017. Pet. Ex. 2 at 1. Additionally, petitioner submitted an affidavit of Dr. Shaer, who had observed the abscess on petitioner's upper left arm at least five months after the administration of the vaccine. The photographs demonstrate that petitioner is left with a permanent scar on her left upper arm because of the hepatitis B vaccination she received on January 13, 2017, and thus, should be compensated. As the residual scar is small and in a cosmetically prominent location, it does not merit the level of damage requested by the petitioner.

---

[4] The case caption in *Moore* was changed after entitlement was found, but before the Decision on Stipulation was entered.

## VI.    Conclusion

For the reasons discussed above and based on consideration of the record as a whole, I find that $125,000.00 represents a fair and appropriate amount of compensation to petitioner for her actual pain and suffering resulting from her shoulder pain and the scar on her arm.  I also find that petitioner is entitled to $779.51 for past unreimbursable expenses, as the parties do not contest this amount.

Based on the record as a whole and arguments of the parties, **I award the following:**

a) **A lump sum payment of $125,779.51 ($125,000.00 representing pain and suffering) and $779.51 in past unreimbursable expenses, in the form of a check payable to petitioner.**  This amount represents compensation for all remaining damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[5] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review.  Vaccine Rule 11(a).